IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EMILY COLLOPY, *individually and for*
*others similarly situated,*

    Plaintiff,

v.   No. 2:23-cv-00143-KG-JHR

WEXFORD HEALTH SOURCES, INC.,

    Defendant.

**MEMORANDUM ORDER AND OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**

THIS MATTER is before the Court on Plaintiff's Motion to Compel Wexford's Discovery Responses, [Doc. 27] ("the Motion"). Having considered the parties' filings and the relevant law, the Court GRANTS IN PART and DENIES IN PART the Motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This case was filed on February 16, 2023, by Plaintiff Emily Collopy as a putative class action against Collopy's employer, Wexford Health Sources, Inc. [Doc. 1, p. 1]. Collopy alleged that Wexford violated the New Mexico Minimum Wage Act by failing to pay her and other hourly employees for work performed during meal breaks and for time spent in daily security screenings, resulting in lost wages and unpaid overtime. *Id.* at 4. Because Collopy, as with all class action representatives in federal court, must prove that she can represent a certifiable class of plaintiffs under Federal Rule of Civil Procedure 23, the Court divided discovery into two phases. *See* [Doc. 15, p. 1]. In the first phase, the parties "may seek and shall produce discoverable information necessary to determine whether the Court should certify the alleged class of plaintiffs[.]" *Id.* A second "merits" phase will follow if Collopy's putative class is certified. *Id.*

1

The parties thus proceeded with certification-phase discovery – and, naturally, discovery disputes. The Motion addresses three categories of information and documents requested by Collopy: (1) class-wide records of working hours and compensation; (2) past claims and complaints against Wexford; and (3) emails between Wexford's executive-level employees. *See* [Doc. 28, pp. 5–11]. Wexford objected to requests and interrogatories in the first two categories arguing they were outside the scope of certification-phase discovery, overbroad, and unduly burdensome, and thus withheld responsive documents and information subject to its objections.[1] [Doc. 28-3, pp. 6–7, 9–10, 26].[2] Wexford also objected to, but ultimately agreed to produce, the requested emails. *Id.* at 15–16; [Doc. 28-4, pp. 3–4]; [Doc. 31, pp. 7–8]. However, Collopy has not received the emails as of September 2023. *See* [Doc. 34, pp. 6–7].

After an unsuccessful status conference to try to resolve the dispute, the Court gave leave for Collopy to move to compel production of the documents and information. [Doc. 25].[3] Collopy filed the Motion and a memorandum in support in August 2023. [Docs. 27, 28]. Wexford responded in opposition on September 11, [Doc. 31], and Collopy replied on September 25, completing briefing. [Docs. 34, 35]. The matter is thus ripe for decision.

## II.     <u>RELEVANT LAW</u>

Under the New Mexico Minimum Wage Act, employers must pay employees hourly wages no less than the amounts set by the Act. *See* N.M.S.A. 1978 § 50-4-22(A). Employers must also pay "one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours" in a week. *Id.* at § 50-4-22(D). The Act also lets employees

---

[1] As to Requests for Production 3 and 5, Wexford directed Collopy to some "responsive documents" "[s]ubject to, and without waiving the foregoing [objections.]" [Doc. 28-3, pp. 6–7]. Wexford also provided some information apparently responsive to Interrogatory 5. *Id.* at 26.
[2] Many exhibits to the parties' filings contain both CM/ECF-generated pagination and internal pagination. For consistency, whenever this Order cites an exhibit, it uses the pagination generated by CM/ECF, which is displayed at the top of each page of the documents.
[3] Document 25 is a text-only docket entry viewable on the Court's CM/ECF system.

sue their employers for failure to pay, or underpayment of, such wages. *Id.* at § 50-4-26(C). Employees seeking recovery for unpaid overtime must prove (1) they worked more than forty hours in a week; (2) management knew or should have known that this was the case; and (3) the employees were not compensated for their overtime work. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046 ¶ 15, 970 P.2d 582, 589.

Employees who wish to sue on behalf of a class of their fellow employees in federal court must present evidence which satisfies the class-certification requirements of Federal Rule of Civil Procedure 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Among other things, they must show that

> (1) the class is so <u>numerous</u> that joinder of all members is impracticable; (2) there are questions of law or fact <u>common</u> to the class; (3) the claims or defenses of the representative parties are <u>typical</u> of the claims or defenses of the class; and (4) the representative parties will fairly and <u>adequately</u> protect the interests of the class.

Fed. R. Civ. P. 23(a) (underlining added). To show commonality, the named plaintiff must "demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The existence of "a single question of law or fact common to the entire class" can be enough prove commonality. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010)). Typicality, meanwhile, "requires only that the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal*, 882 F.3d at 924 (quoting *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014)).

Discovery is often necessary to uncover evidence to satisfy these requirements. For information to be discoverable, it must be "relevant to [a] party's claim[s] or defense[s] and

proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Information is relevant when it tends to make a fact more or less probable and when that fact is of consequence in determining the action.[4] Fed. R. Evid. 401. Though the Rules of Evidence provide this definition, "relevance" is construed somewhat more broadly in the discovery context than it is for admissibility at trial. *See Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 431 (D.N.M. 2022). Whether a request is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The certification-phase limitations on discovery in this case also narrow what is currently discoverable. *See* [Doc. 15]. Courts can limit discovery in putative class actions when certification issues are still unresolved. *Deakin*, 340 F.R.D. at 432; *see also* Fed. R. Civ. P. 23(d)(1)(E) (allowing courts to issue orders dealing with "procedural matters" necessary to conduct a class action). Under the controlling scheduling order, the parties "may seek and shall produce discoverable information necessary to determine whether the Court should certify the alleged class of plaintiffs[.]" [Doc. 15, p. 1]. In line with *Deakin* and similar cases, the Court construes this limitation broadly enough to give Collopy "a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad[ly] that the discovery efforts present an undue burden" to Wexford. *Deakin*, 340 F.R.D. at 432 (quoting *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998)). This is not a

---

[4] Courts have also defined "relevant" information under Rule 26(b)(1) as matters which bear on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1233 (D.N.M. 2021) (analyzing the *Oppenheimer Fund* definition in light of edits to the Rules). Neither party argues for one definition over the other, and it is not clear that it makes a difference which definition the Court applies. The Rule 401 definition appears to be more popular among judges in the District of New Mexico, so the Court adopts it in this case for the sake of consistency. *See, e.g., Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 431 (D.N.M. 2022).

prohibition on class-wide discovery, nor on discovery which may bear on the merits of Collopy's case.  Certification- and merits-phase discovery are not always easily discernable, in part because Rule 23's commonality and typicality requirements intertwine class certification issues with the merits of the underlying claims.  *See Deakin*, 340 F.R.D. at 432.  So although the Court will not compel production of information which is obviously unnecessary to class certification, it also will not refuse to compel production simply because the information sought may be helpful in adjudicating the case on its merits.

### III.   DISCUSSION

Based on the law discussed above, there are three questions to ask about Collopy's discovery requests:  Is the information sought relevant to the parties' claims and defenses?  Is it proportional to the needs of the case in the certification phase of discovery?  And is the information reasonably necessary for the Court and the parties to determine whether Collopy's proposed class should be certified?  If the answer to all three questions is "yes," Wexford will be compelled to produce responsive documents and information.

    a.   *The Motion is Partly Granted as to Class-Wide Timesheets and Payroll Records*

        i.   Parties' Positions

In her First Amended Requests for Production, Collopy asked Wexford to produce:

> 3.  The DOCUMENTS containing timesheets and payroll records for PLAINTIFF and NEW MEXICO CLASS MEMBER [*sic*] for the RELEVANT TIME PERIOD.
> . . .
> 19.  The DOCUMENTS that most accurately reflect the hours each PLAINTIFF and NEW MEXICO CLASS MEMBER worked each day and week during the LIMITATIONS PERIOD.

[Doc. 28-3, pp. 5, 13].  Collopy also posed the following interrogatory:

> 5.   For each week during which PLAINTIFF and NEW MEXICO CLASS MEMBERS performed work for YOU during the LIMITATIONS PERIOD, state how many hours each PLAINTIFF and NEW MEXICO CLASS MEMBERS [*sic*]

5

>  worked on each day of the workweek, to include and IDENTIFY their start and stop times each day.

*Id.* at 26.  Collopy defined "relevant time period" as "the time period beginning January 1, 2017, and continuing through the present" and "limitations period" as "the period beginning February 16, 2020, and continuing through the present." [Doc. 31-1, p. 4].  She argues that she needs this information "to satisfy her burden to establish typicality and commonality of the Class Members," as these records will show that Wexford enforced a uniform policy of deducting mealtime and screening time and consequently underpaid the putative class members.  *See* [Doc. 28, p. 5].

Wexford opposes the requests for four reasons.  First, it argues that records predating February 16, 2020, are outside the limitations period for Collopy's claim, so requests for them should be categorically denied.  [Doc. 31, p. 2].  Second, Wexford says it already produced enough information to prove uniform timekeeping policies, including descriptions of timekeeping policies and practices related to them, as well as depositions of two of Wexford's human resources officers.  *Id.* at 2–4.  Additional discovery of timesheets and pay records would thus be cumulative.  Third, Wexford leans heavily on *Deakin v. Magellan Health, Inc.*, in which this Court held "that class-wide discovery should generally be reserved for the discovery phase that will follow final collective or class certification, if granted."  340 F.R.D. at 434; [Doc. 31, p. 5].  Finally, Wexford asserts that producing these documents would be overburdensome. [Doc. 31, pp. 5–6].  Its chief support for this is a sworn declaration by its Vice President of Human Resources, stating that time and pay records must be collected "on an employee-by-employee basis" and doing so would require "significant overtime" from Wexford's human resources departments.  *Id.* at 5.  In short, Wexford asserts that a significant amount of the information requested is irrelevant; that all the requested information is cumulative; that

producing it would be overburdensome; and production would be contrary to the principles of phased class-action discovery.

> ii. Analysis

The Court partly denies Collopy's Motion as to Request for Production 3, specifically insofar as it requests timesheets and payroll records outside the limitations period. Request for Production 3 calls for information dating back to January 2017, over six years before Collopy sued. *See* [Doc. 1]. The statute of limitations on Minimum Wage Act claims is three years. N.M.S.A. 1978 § 37-1-5. Collopy does not explain why timesheets and payroll records from outside the limitations period are necessary to show commonality or typicality among putative class members. *See generally* [Docs. 28, 34]. Though this information may conceivably be discoverable, Collopy does not carry her burden to show it, nor is the reason clear on its face. That part of the Motion is thus denied.

The Court grants the Motion as to Requests for Production 3 and 19 insofar as they request information from within the limitations period. The information is plainly relevant, as it goes to whether time, and thus compensation, was deducted for Collopy and the putative class members. More importantly, it goes to whether Collopy can prove commonality. As discussed above, Collopy will need to prove that there is a common question of fact or law among the putative class members, and this common question must show that they have suffered a common injury. *See Dukes*, 564 U.S. at 349–50. The alleged common injury, at its core, is a discrepancy between the amount of time employees worked and the amount of time for which they were paid. *See* [Doc. 1, pp. 1–2]. The most direct way to show that the putative class members have this injury in common is to show, on the one hand, that their timesheets and pay records reflect time deductions, and on the other, evidence showing they worked more time than the records

7

suggest.[5]  Timesheets and corresponding payroll records for the putative class are thus reasonably necessary for Collopy to prove the existence of a common injury in her eventual motion for class certification.

Other courts have recognized the need for pre-certification class-wide discovery of time and pay records to prove commonality in putative wage-and-hour class actions.  In *Marin v. Apple-Metro, Inc.*, restaurant employees brought a putative class action against their employer, alleging they were illegally underpaid because the employer did not accurately record the employees' working hours.  12-cv-05274-ENV-CLP, 13-cv-01417-ENV-CLP, 2023 WL 2060133 at *1 (E.D.N.Y. Feb. 8, 2023).  The court in that case held that timekeeping and earnings data were "directly relevant to plaintiffs' core allegations" and may be necessary to prove commonality based on an express or *de facto* policy mandating off-the-clock work.  *See id.* at *4.  The employer was thus compelled to produce the data.  *Id.* at *10.  Another court held similarly in *Pagan v. C.I. Lobster Corp.*, compelling pre-certification production of time and pay records for another putative class of restaurant employees because the information would aid in determining whether the putative class should be certified.  1:20-cv-07349-ALC-SDA, 2021 WL 4239200 at *2–3 (S.D.N.Y. Sept. 17, 2021).  The court in *Arredondo v. Sw. & Pacific Specialty Finance, Inc.* held almost identically when it compelled production of pay and timekeeping records pre-certification because the information was "relevant to numerosity, commonality, and typicality[.]"  1:18-cv-01737-DAD-SKO, 2019 WL 6128657 at *6–7 (E.D. Cal. Nov. 19, 2019).  And, in a similar vein, the Central District of California often compels production of timekeeping

---

[5] This does not mean Collopy necessarily needs to do this to achieve class certification, and nothing in this Order should be construed as a ruling on whether or how the putative class should be certified.  The point merely illustrates why class-wide discovery, at least on this issue, is reasonable and will be compelled.

8

and pay data for representative samples of putative class members.[6] *See, e.g., Godinez v. Merritt Hosp., LLC*, 8:20-cv-00941-JWH-KESx, 2021 WL 1231422 at *3 (C.D. Cal. Mar. 3, 2021) (ordering an employer to produce "time and pay data" on "a 20% sampling" of its hourly employees[7] before class certification); *Trujillo v. Chef's Warehouse W. Coast LLC*, 2:19-cv-08370-DSF-MAAx, 2020 WL 7315346 at *24–27 (C.D. Cal. Oct. 19, 2020) (ordering an employer to produce representative time and pay data on 50% of the putative class members).

The substance of Collopy's claim is the same as that of the plaintiffs' claims in each of these cases. She asserts that she and the putative class members were required to do something as part of their jobs (e.g., work through lunch, be screened for security purposes); that these tasks were compensable work; that their employer's policy was not to record time spent doing this work; and that employees were underpaid as a result. [Doc. 1, pp. 5–6]. Thus, the same arguments which justify pre-certification discovery of time and payroll data in the cases discussed above justify similar discovery here. Collopy's pre-certification requests for this information may be uncommon in this district, but they are far from unprecedented.

Wexford's arguments that timesheets and pay records are unnecessary or outside the scope of pre-certification discovery are unpersuasive. Depositions and copies of company policy documents may show that it is Wexford's stated practice to deduct mealtime or not pay employees for time spent in security screenings, but these documents may not be enough to show that the putative class members actually lost money, and thus suffered a common injury. And though *Deakins* provides helpful guidance, the general principle articulated in that case does not apply here. Judge Khalsa was clear that "class-wide discovery related to the merits of a class

---

[6] The Court does not opine on whether similar "sampling" of timesheets and payroll information would be appropriate in this case because neither party briefed the issue.
[7] The "20% sampling" was made up of data on approximately 540 employees. *Godinez*, 2021 WL 1231422 at *2.

action is not categorically prohibited prior to certification." *Deakins*, 340 F.R.D. at 432 (quoting *Infinity Home Collection v. Coleman*, 17-mc-00200-MSK-MEH, 2018 WL 1733262 at *2 (D. Colo. April 10, 2018)).  The Court in *Deakins* denied the class-wide discovery not because it was required to do so, but because the plaintiffs requested a "blanket ruling requiring Defendants to respond to Plaintiffs' first sets of discovery requests with information about every putative class member" without explaining why class-wide discovery was necessary for any of those requests. *See Deakins*, 340 F.R.D. at 433–34.  Collopy's requests are not so broad, nor are they unexplained.  She asks for specific class-wide information and, at least as to these two Requests for Production, persuasively connects the requests to the commonality requirement for certification.  *See* [Doc. 28, pp. 5–8].  *Deakins* thus illustrates a general legal principle, but its ultimate holding does not guide the Court here.

    Nor has Wexford shown that production of timesheets and pay records will be overburdensome.  Tina Tacka, Wexford's Vice President of Human Resources, stated that "timekeeping and pay records cannot be retrieved en masse" and that the process for producing timekeeping records and "gross-to-net" earnings reports for hundreds of employees will take many hours.  [Doc. 31-2, pp. 1–3].  This statement may be true for human resources employees producing information through the standard user interface of the Kronos software.  But the Kronos Manager Guide attached to Collopy's reply suggests that data can be retrieved "en masse" using special report functions.  *See* [Doc. 34-2, pp. 31–32].  Wexford also does not indicate whether it has sought technical support to help retrieve its timesheets and pay records in large batches.  *See* [Doc. 31, pp. 3–6].  In sum, it appears as though Wexford would be seriously burdened by the production of class-wide records, but only if it were to do so in the least convenient way available to it.  Wexford may choose to do so, but it is not required.

10

Collopy's Motion is denied, however, as to Interrogatory 5. The Interrogatory asks for information which is entirely cumulative of the information contained in data and records requested in Requests for Production 3 and 19. [Doc. 28-3, p. 26]. Responding to the interrogatory in the form of an answer to a question may also require Wexford to spend additional time reviewing and summarizing the relevant information, adding unnecessary expense. Collopy's request for further response to Interrogatory 5 is thus denied as disproportionate to the needs of the case in the pre-certification stage.

      b.  *The Motion is Denied as to Past Allegations, Complaints, and Claims*

Collopy made the following three Requests for Production:

> 8. The DOCUMENTS exchanged with local, state, and/or federal government agencies during the RELEVANT TIME PERIOD related to allegations regarding failure to properly pay wages and OVERTIME COMPENSATION, including but not limited to investigative materials, findings, questionnaires, orders, and reports.
>
> 9. The DOCUMENTS recording or evidencing notices of claims or complaints (whether written or oral) concerning YOUR failure to pay wages and/or OVERTIME COMPENSATION to PLAINTIFF and/or the NEW MEXICO CLASS MEMBERS during the RELEVANT TIME PERIOD. The search for such DOCUMENTS should include, but should not be limited to, reports from/to EMPLOYEES, field managers, and office personnel, as well as inquiries from and reports to local, state, and federal government entities.
> . . .
> 11. The DOCUMENTS containing, documenting, identifying, referencing, or related internal audits or reviews of WEXFORD wage payment and/or timekeeping practices that applied to PLAINTIFF and/or the NEW MEXICO CLASS MEMBERS, including any investigation or audit of WEXFORD during the RELEVANT TIME PERIOD, to specifically include . . . DOCUMENTS reflecting any changes WEXFORD made to any such policies during the RELEVANT TIME PERIOD.

[Doc. 28-3, pp. 8–10]. Collopy argues that Wexford should produce these documents "because they demonstrate Wexford knew, or should have known, that its uniform pay policies were illegal" and thus whether Wexford acted knowingly and willfully. *See* [Doc. 28, p. 8]. Such evidence may also go to the strength of Wexford's good faith defense. *Id.* at 10. Without

11

explanation, Collopy also asserts that "any complaints from the relevant time period . . . go directly to the typicality and commonality of the New Mexico Class[.]" *Id.*

Wexford opposes production on the grounds that Collopy is asking for a "fishing expedition." [Doc. 31, p. 6] (citing *Buster v. Bd. of Cnty. Comm'rs for Lincoln County*, 2:21-cv-01208-MLG-JHR, 2023 WL 4202628 at *1 (D.N.M. June 27, 2023)). To support this, Wexford points to the breadth of the requests, seeking "production of *any* documents exchanged with governments or complaints from employees related to *any* alleged wage violations, as well as documents related to *any* complaints and internal audits, even those beyond the scope of the claims alleged by Plaintiff." [Doc. 31, p. 7] (emphasis in original).

The Motion is denied as to these requests. Though records of past complaints may be relevant to the merits of Collopy's claim, she does not show that she needs them for class certification. Her bare assertion that this information will "go directly to . . . typicality and commonality" does not make it true. [Doc. 28, p. 10]. The cases she cites are no help either. Although they discuss the relevance of past employee complaints as evidence at trial, they arise from motions which would have been filed well after class certification, and one was a case in which no class was certified. *See Mendez v. Integrated Tech Grp., LLC*, 18-cv-22059-LOUIS, 2020 WL 10459634 at *1 (S.D. Fla. Feb. 7, 2020) (deciding whether to admit evidence based on a motion *in limine*); *Reich v. Montfort, Inc.*, 144 F.3d 1329, 1331 (10th Cir. 1998) (appealing from a district court's final findings of law and fact); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, 20-cv-60064-CANNON-Hunt, 2021 WL 7540775 at *1 (S.D. Fla. Dec. 1, 2021) (deciding whether to admit evidence based on a motion *in limine* in a case with only one plaintiff). Wexford thus will not be compelled to produce documents responsive to Requests for Production 8, 9, and 11 before class certification.

      c.  *Wexford Must Notify the Court about Production of Emails*

Finally, Collopy asked Wexford to produce:

> 24.  All emails from the RELEVANT TIME PERIOD in the individual inboxes and/or outbox/sent folders of Elaine Gedman, Daniel Conn, Mark Blewett, and Joe Ebbitt regarding WEXFORD's timekeeping policies and practices applicable to PLAINTIFF and the NEW MEXICO CLASS MEMBERS (to specifically include communications regarding PRE-SHIFT WORK and/or POST-SHIFT WORK, WEXFORD'S AUTO-DEDUCTION policy/ies, MEAL BREAKS, OFF THE CLOCK work, and OVERTIME COMPENSATION).

[Doc. 28-3, pp. 15–16].  Collopy does not say whether the emails are necessary for class certification.  *See* [Doc. 28, pp. 10–11].  Instead, she claims she needs the requested emails "to show that Wexford management knew, or should have known, that its timekeeping and pay policies" violated the New Mexico Minimum Wage Act.  *Id.* at 10.  Wexford, meanwhile, objects on the grounds that the emails are unnecessary for class certification and that the request is overbroad.  [Doc. 31, p. 7].  The parties agree, however, that Wexford promised to produce emails responsive to the request.  [Doc. 28, p. 11]; [Doc. 28-3, p. 3]; [Doc. 31, pp. 7–8].  Wexford says it is in the process of reviewing the documents and "intends to produce relevant documents responsive its after [*sic*] review is complete."  [Doc. 31, p. 8].

      The Court declines to compel production of the emails, at least for now.  Wexford shall, instead, file a notice with the Court no later than **March 4, 2024.**  The notice must either affirm that Wexford has produced the promised communications and a privilege log (if needed) by that date or give an update on progress toward production.  The update will state how many hours have been spent gathering, reviewing, and producing the emails; what fraction of the documents being reviewed have been reviewed as of the notice's filing date; how many more hours Wexford anticipates will be necessary to finish the document review; and an estimated date by which the emails and privilege log (if needed) will be produced to Collopy.

## IV. CONCLUSION

Based on the discussion above, the Court **ORDERS** the following:

(1) No later than **April 1, 2024,** Wexford shall produce to Plaintiff Emily Collopy (a) documents containing timesheets and payroll records for Plaintiff Emily Collopy and the putative class members from February 16, 2020 to the present, and (b) whatever documents within its possession and control most accurately reflect the hours Plaintiff Emily Collopy and the putative class members worked each day and week from February 16, 2020 to the present.

(2) No later than **March 4, 2024,** Wexford shall file a notice with the Court either affirming that it has produced emails responsive to Request for Production 24 or providing an update on production of the emails as detailed above.

All other relief is **DENIED** as to the first phase of discovery. If Collopy's putative class is certified, Collopy may seek leave to compel production of other requested information according to the procedure for resolving discovery disputes provided in the Court's operative Scheduling and Case Management Order. *See* [Doc. 15, p. 3].

**IT IS SO ORDERED.**